## IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST James J. CALDWELL, Attorney at Law.

Supreme Court

*No. 87–0741–D. Submitted on briefs November 3, 1988.—Decided December 5, 1988.*

(Also reported in 432 N.W.2d 98.)

For the appellant, the Board of Attorneys Professional Responsibility, there was a brief by *Robert G. Krohn,* Janesville.

PER CURIAM. *Attorney disciplinary proceeding; attorney publicly reprimanded.*

The Board of Attorneys Professional Responsibility appealed from the recommendation of the referee in this disciplinary proceeding that Attorney James Caldwell be privately reprimanded for professional misconduct. We determine that the recommended discipline is insufficient and we impose a public reprimand on Attorney Caldwell in response to the seriousness of the misconduct and to inform other attorneys of the need to avoid engaging in like misconduct.

Attorney Caldwell's misconduct consisted of the following: he entered into a business transaction with a client in which they had differing interests and in which the client expected him to exercise his professional judgment for the client's protection, thus violating SCR 20.27(1) (1986); he refused to return client files unless the client signed a general release of any liability Attorney Caldwell might have to the client, in violation of SCR 20.33 (1986); he failed to fully respond to Board requests for information in the course of its investigation of grievances against him, in violation of SCR 21.03(4) and 22.07(2); he failed to produce trust account records in response to Board requests, in violation of SCR 11.05(2).

Attorney Caldwell was admitted to practice law in Wisconsin in 1956 and practices in Waukesha. He has not previously been the subject of a disciplinary proceeding. The referee is Attorney William G. Bunk.

The parties stipulated to the following facts and Attorney Caldwell admitted that his conduct violated the rules set forth above. In the early 1970's, Attorney Caldwell represented a client in a dispute with Clarence Beierle, who operated a business making videotape depositions for lawyers. After that dispute was resolved, Attorney Caldwell and Mr. Beierle became

friends. On one occasion, Mr. Beierle loaned Attorney Caldwell $14,000, and Attorney Caldwell timely repaid the loan. Over the next 10 years, Mr. Beierle and Attorney Caldwell were in constant communication, although not in an attorney-client relationship.

In the late 1970's, Mr. Beierle, Attorney Caldwell and another person formed a corporation to conduct a videotape deposition business, each of them owning one-third of the corporation's stock. In connection with that business, Mr. Beierle formed a corporation of which he was sole stockholder for the leasing of videotape equipment. To do so, he borrowed $10,000 from a bank, and the other two shareholders in the videotape deposition corporation guaranteed that loan but had no interest in the corporation itself. As the lender was the bank where he maintained both his personal checking account and his attorney trust account, Attorney Caldwell told the bank it could, if necessary, withdraw funds from his personal account to make loan payments in the event Mr. Beierle failed to do so.

Subsequently, the videotape business failed. Later, when Mr. Beierle did not timely make payments on the note Attorney Caldwell had guaranteed, the bank withdrew funds from Attorney Caldwell's trust account, not his personal account, to pay the indebtedness. This was done without Attorney Caldwell's knowledge or consent. When Attorney Caldwell learned of it, he withdrew all client funds, as well as his own funds, from that bank. Ultimately, he and Mr. Beierle paid the indebtedness.

In March, 1981, Mr. Beierle and his wife retained Attorney Caldwell to commence an action on their behalf and Attorney Caldwell did so. On September 2, 1981, while that action remained pending, Mr. Beierle

loaned Attorney Caldwell $5,000. Attorney Caldwell agreed that he would draw a note to evidence the loan, but he did not do it. He also agreed to assign to Mr. Beierle a lease option he had in his residence as security for the loan and he did so. On the day after the loan was made, Mr. Beierle retained Attorney Caldwell to represent him in action to collect on a debt.

Several years later, in February of 1985, Mr. Beierle asked Attorney Caldwell to return the files of the two actions he had retained him to bring. Attorney Caldwell told him he would return the files only upon the condition that Mr. Beierle first sign a general release agreement in which each would release the other "from any and all obligations, one to the other, including, but not limited to causes of action, work to be performed and accomplished, notes, evidences of indebtedness or choses in action, from the beginning of time until the present date." Mr. Beierle refused to sign that release and filed a grievance with the Board concerning Attorney Caldwell's conduct.

In the course of the Board's investigation of that grievance, Attorney Caldwell responded to some but not all of the requests for information, and he gave Mr. Beierle's files to the Board. When the Board directed Attorney Caldwell to produce his trust account records, apparently in connection with its investigation of the bank's withdrawal of funds from his trust account to make loan payments, Attorney Caldwell filed a motion to quash that request. The referee never decided that motion, and the Board's counsel served Attorney Caldwell with a request to produce the records. He again failed to produce them but they were eventually subpoenaed from the bank during the course of the disciplinary proceeding.

The referee accepted Attorney Caldwell's admission and the parties' stipulation and concluded that Attorney Caldwell's conduct violated the rules cited above. In addition, the referee noted factors he considered as mitigating the seriousness of those violations. Concerning the loan transaction with the client, while Attorney Caldwell did not advise his client to have another person draw up the note to evidence the $5,000 loan, the referee found it clear that he did not seek to avoid that debt in light of the fact that he did prepare the assignment of his leasehold interest as security. With respect to the demand that the client sign a release in order to obtain his files, the referee found no clear and convincing evidence of any malpractice on Attorney Caldwell's part in his professional relationship with Mr. Beierle and, thus, no malpractice liability from which to be released. Regarding the failure to respond to the Board's inquiries and produce trust account records, the referee found that Attorney Caldwell did cooperate, although not as fully as he might have; he considered the failure to produce trust account records "minimized" by the fact that counsel for the Board did not seek to compel their production by motion pursuant to statute during the disciplinary proceeding and by the fact that there was no showing of any fraud, deceit or dishonesty on Attorney Caldwell's part toward his client.

In its appeal from the referee's recommendation of a private reprimand, the Board argued that the matters the referee considered to mitigate the seriousness of Attorney Caldwell's misconduct and attenuate the severity of the discipline to be imposed for it were irrelevant. In the matter of the client's loan, the Board contended that the fact that Attorney Caldwell might not have sought to avoid liability on the debt had no

bearing on the question of whether he violated the rule prohibiting a lawyer from entering into a business transaction with a client in which they have differing interests and in which the client expects the lawyer to exercise independent professional judgment on the client's behalf. The Board noted that Attorney Caldwell's initial response during its investigation of the matter was to deny that he had received the client's $5,000 check and to allege that his endorsement on the back of that check was a forgery. Ultimately, however, Attorney Caldwell acknowledged that he had accepted and used the proceeds of the loan from the client.

Further, Attorney Caldwell initially testified that at the time the loan was made, Mr. Beierle was not a client, for the reason that there was no litigation then pending in which he was involved. In fact, however, the first action Attorney Caldwell commenced on the client's behalf was pending the day the loan was made; the other action was commenced the following day. Regardless of his intent with respect to the loan, the Board asserted, Attorney Caldwell had the obligation to advise Mr. Beierle to obtain separate counsel to see that appropriate documentation was drafted to reflect the loan and to establish specific terms and conditions for repayment.

In the matter of the release demanded in return for the client's files, the Board argued that the absence of any malpractice on Attorney Caldwell's part from which to be released in no way affects the seriousness of his attempt to have the client sign a general release of liability in order to get his files. The rule, SCR 20.33 (1986), prohibited Attorney Caldwell from attempting to exonerate himself from or limit his liability to Mr. Beierle for malpractice. As that

was the clear intent of the release demanded, the Board argued, it constituted misconduct.

Regarding Attorney Caldwell's failure to cooperate and to produce trust account records upon Board request, the Board contended that the referee wrongly considered the absence of fraud, deceit or dishonesty as mitigating the seriousness of those failures. It asserted that there is nothing in the court's rules of attorney conduct requiring the Board to bring motions to compel the production of documents in order for any attorney's refusal to do so upon request to constitute misconduct.

We agree that the referee gave undue consideration to matters he apparently found to have mitigated the gravity of Attorney Caldwell's misconduct. The seriousness of Attorney Caldwell's failure to prepare the note evidencing the loan from his client was mitigated, if at all, by the fact that he enjoyed a longstanding personal relationship with the man before he became a client; indeed, he had previously borrowed money from him. Nevertheless, whether or not Attorney Caldwell attempted to avoid liability on the debt has no bearing on the seriousness of his entering into the loan with a client who had the right to expect his attorney to act professionally to protect him. In the matter of the release he demanded, it is immaterial whether there was, in fact, any malpractice liability. The misconduct lay precisely in Attorney Caldwell's attempt to exonerate himself from any and all liability to the client and withholding the client's files to get that release. Finally, the absence of fraud, deceit or dishonesty on Attorney Caldwell's part in refusing to cooperate with the Board in its investigation of alleged professional misconduct does not in any way lessen the seriousness of such failure. Our rules make clear a

lawyer's duty to cooperate with the Board in its investigation of alleged attorney misconduct.

We determine that Attorney Caldwell's misconduct in these matters warrants the imposition of a public reprimand to impress upon him the serious nature of his failings in his professional duties to his clients and to the court's Board in carrying out its responsibilities to enforce the court's rules of professional conduct. It will also inform other attorneys that like misconduct will result in the imposition of discipline.

In addition to the public reprimand, we require Attorney Caldwell to pay one-fourth of the costs of this proceeding. Ordinarily, we would require him to pay the costs in full; but the Board had agreed to his payment of one-fourth that amount for the reason that, during the course of the disciplinary proceeding, it dismissed other misconduct allegations it had set forth in its complaint.

IT IS ORDERED that Attorney James J. Caldwell is publicly reprimanded for professional misconduct.

IT IS FURTHER ORDERED that within 60 days of the date of this order James J. Caldwell pay to the Board of Attorneys Professional Responsibility one-fourth of the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of James J. Caldwell to practice law in Wisconsin shall be suspended until further order of the court.